UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LESLIE WOOD,

                              Plaintiff,

v.                                                                  5:06-CV-0157
                                                                         (FJS/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CONBOY, McKAY, BACHMAN &<br>    KENDALL, LLP.<br>*Counsel for Plaintiff*<br>307 State Street<br>Carthage, New York 13619 | LAWRENCE D. HASSELER, ESQ. |
| HON. ANDREW T. BAXTER<br>Acting United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>100 South Clinton Street<br>Syracuse, New York 13261-7198 | |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza<br>New York, New York 10278 | BARBARA L. SPIVAK, ESQ.<br>Chief Counsel, Region II<br><br>JENNIFER S. ROSA, ESQ.<br>Special Assistant U.S. Attorney |

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

      This matter was referred to the undersigned for report and recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with General Order 18 of this Court, which sets forth the procedures to be followed


when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. Because I find that the Commissioner failed to properly assess Plaintiff's Residual Functional Capacity ("RFC"), I recommend that the matter be remanded for further proceedings.

**I.     BACKGROUND**

    **A.     Procedural History**

Plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on February 21, 2004. (Administrative Transcript ("T") at 52-54, 371-73, Dkt. No. 6)  The applications were denied initially. (T. at 35-40, 374-79.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on June 22, 2005. (T. at 390-411.) On September 2, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 13-21.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 20, 2006. (T. at 4-8.) Plaintiff commenced this action on February 6, 2006. (Dkt. No. 1.)

    **B.     The Contentions**

Plaintiff makes the following claims:

(1)     The Commissioner failed to properly assess Plaintiff's RFC. (Dkt. No. 7 at 10-15.)

(2)     The Commissioner erred in determining that jobs existed in sufficient numbers in the national and regional economy that the Plaintiff could perform. (Dkt. No. 7 at 15-16.)

(3)     The Commissioner erred in finding that the Plaintiff's subjective complaints were not totally credible.  (Dkt. No. 7 at 16-18.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 9.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim

further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.

1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III. THE PLAINTIFF

Plaintiff is 33 years old. (T. at 52.) She completed the eleventh grade and previously worked as a server in a restaurant and as a secretary. (T. at 64, 69, 76, 81.) On June 27, 1999, Plaintiff's husband shot her in the neck at close range with a shotgun. (T. at 142.) Plaintiff alleges disability due to the shotgun injury, anxiety, and depression. (T. at 14, 63, 75.)

### IV. THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff has not engaged in any substantial gainful activity since the alleged onset date; (2) Plaintiff has depression and a severe musculoskeletal impairment; (3) Plaintiff's impairments do not meet or equal a listed impairment; (4) Plaintiff's allegations of disabling symptoms are not fully credible; (5) Plaintiff has the RFC to perform the requirements of light work while lifting no more than forty pounds and avoiding heights and dangerous machinery and she retains the capability to follow simple instructions, maintain attention, and interact with others; (6) Plaintiff cannot perform her past relevant work; (7) using the testimony of a vocational expert as well as Medical-Vocational Rule 202.18, there are a significant number of jobs in the national economy that Plaintiff could have performed; and (8) Plaintiff is not disabled. (T. at 14-22.)

### V. DISCUSSION

#### A. Whether the ALJ Properly Assessed Plaintiff's RFC

The ALJ found that Plaintiff has the RFC to lift 40 pounds, follow simple instructions, maintain attention, and interact with others, but that she should avoid work at heights and around dangerous machinery. (T. at 21.) Plaintiff argues that the ALJ did not properly assess her RFC.

Specifically, she argues that the ALJ erred by (1) failing to include any limitations imposed by Plaintiff's severe depression; (2) finding that Plaintiff can lift 40 pounds; and (3) failing to provide a function-by-function assessment of Plaintiff's abilities. (Dkt. No. 7 at 10-15.)

    1.    <u>Mental RFC</u>

The ALJ found that Plaintiff retains the mental RFC to "follow simple instructions, maintain attention, and interact with others." (T. at 21.) Plaintiff argues that the ALJ erred by failing to include any limitations imposed by Plaintiff's severe depression in the RFC assessment. Plaintiff is correct.

On May 6, 2004, Duarte Velosa, a physician's assistant who provides most of Plaintiff's treatment, reported that Plaintiff's depression was worsening and prescribed Zoloft. (T. at 319) On May 21, 2004, PA Velosa noted that the Zoloft was working and that Plaintiff's depression and anxiety were somewhat improved. (T. at 320.) On June 21, 2004, PA Velosa stated that Plaintiff's depression and anxiety were not well controlled and suggested alternating Zoloft, Wellbutrin, and Xanax. (T. at 324.) On September 9, 2004, PA Velosa noted that Plaintiff's depression was improving. (*Id.*)

Although he treats Plaintiff more often than any other medical professional, PA Velosa's opinion is not a "medical opinion" because under the Regulations, a physician's assistant is not listed as an "acceptable medical source" who can give a medical opinion establishing an impairment. 20 C.F.R. §§ 404.1513 (a) & 416.913(a); *Colondres v. Barnhart*, Civ. No. 04-1841, 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005) (noting that a physician's assistant "is not an acceptable medical source and such opinion is never entitled to [controlling] weight" as is afforded to a treating physician). Thus, the only "medical opinions" in the record regarding

Plaintiff's mental abilities are that of Dr. Jeanne A. Shapiro (a consultative examiner) and Dr. M. Apacible (a non-examining agency analyst).

Dr. Shapiro conducted a psychiatric evaluation of Plaintiff on May 7, 2004. (T. at 255-59.) Dr. Shapiro found that Plaintiff's speech was fluent and clear, thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia, affect was congruent with her thoughts and speech, mood was depressed, sensorium was clear, attention, concentration, and memory skills were intact, intellectual functioning was in the average range, and insight and judgment were poor. (T. at 257.) She concluded that Plaintiff was able to follow, understand, and remember simple directions and instructions, perform simple and complex tasks with supervision and independently, regularly attend to a routine and maintain a schedule, make appropriate decisions, maintain attention and concentration, learn new tasks, and relate and interact appropriately with others. Dr. Shapiro noted that Plaintiff would have "some difficulty adequately dealing with stress." (T. at 258.) Dr. Shapiro did not specify what form this "difficulty" would take.

Dr. Apacible completed a Psychiatric Review Technique Form on June 22, 2004. (T. at 270-79.) Dr. Apacible concluded that Plaintiff had mild restrictions of activities of daily living, no difficulty in maintaining social functioning, moderate difficulty in maintaining concentration, persistence, or pace, and there was insufficient evidence to determine if there were repeated episodes of deterioration. (T. at 280.) The same day, Dr. Apacible completed a mental RFC assessment. (Tr. at 266-68.) Dr. Apacible examined twenty categories of mental functioning and found that Plaintiff had moderate limitations in only three categories. (T. at 266-67.) Those three categories were: (1) the ability to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (2) the ability to respond appropriately to changes in the work setting; and (3) the ability to set realistic goals or make plans independently of others.  (T. at 267.)  In the other 17 categories, Dr. Apacible found that Plaintiff is not significantly limited.

The ALJ's RFC assessment failed to incorporate the limitations noted by Drs. Shapiro (difficulty adequately dealing with stress)  and Apacible (moderate limitations on the abilities to complete a normal workday and workweek without interruptions, respond appropriately to changes in the work setting, and set realistic goals and make plans independently of others).  Nor did the ALJ explicitly reject those doctors' opinions.  Therefore, remand is appropriate.

    2.    <u>Ability to Lift 40 Pounds</u>

The ALJ's finding that Plaintiff retains the RFC to lift 40 pounds is not supported by substantial evidence in the record.  The only person to opine that Plaintiff could lift forty pounds was PA Velosa.  On March 25, 2004, PA Velosa opined that Plaintiff could frequently lift up to forty pounds and that she had no limitation in standing, walking, sitting, pushing, or pulling.  (T. at 240-41.)  As noted above, under the Regulations a physician's assistant is not an "acceptable medical source" who can give a medical opinion establishing an impairment."  20 C.F.R. §§ 404.1513 (a) & 416.913(a); *Colondres v. Barnhart*, Civ. No. 04-1841, 2005 WL 106893, at *6 n. 97 (S.D.N.Y. Jan. 18, 2005) (noting that a physician's assistant "is not an acceptable medical source and such opinion is never entitled to [controlling] weight" as is afforded to a treating physician).  In contrast to PA Velosa's opinion, consultative examiner Dr. Ganesh found that Plaintiff had moderate limitations in lifting and carrying and the state agency analyst stated that

Plaintiff could only lift and carry ten pounds. Thus, there is not substantial support for the ALJ's conclusion.

      3.      <u>Function-by-Function Analysis</u>

Plaintiff argues that the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's abilities. Plaintiff is correct.

In determining a plaintiff's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including [a plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, crouch, a plaintiff's mental abilities, and any environmental limitations]. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *1-2, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also Mardukhayev v. Comm'r of Soc. Sec.*, Civ. No. 01-1324, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).

Other circuits have held that "[a]lthough a function-by-function analysis is desirable, the ALJ need not discuss each factor in his written opinion." *Delgado v. Comm'r of Soc. Sec*, 30 Fed. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v . Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. 2000)). The Second Circuit, however, has not specifically addressed the application of SSR 96-8p. *See Novak v. Astrue*, No. 07 Civ. 8435 (SAS), 2008 WL 2882638, at 3 (S.D.N.Y. July 25, 2008). The Southern District of New York appears to have adopted the interpretation that a discussion of each factor is "desirable" rather than mandatory. *See e.g. Novak*, *supra*; *Casino-Ortiz v. Astrue*, No. 06 Civ. 0155 (DAB)(JCF), 2007 WL 2745704, at * 13 (S.D.N.Y.

Sept. 21, 2007). In contrast, judges in this District and in the Eastern and Western Districts of New York have remanded cases based on the ALJ's failure to explicitly discuss a function-by-function analysis in the hearing decision. *McMullen v. Astrue*, No. 5:05-CV-1484 (LEK/GHL), 2008 WL 3884359, at *6 (Aug. 18, 2008) ("[T]he ALJ erred in determining that Plaintiff could do light work before fully assessing his work-related abilities on a function-by-function basis. The ALJ failed to specify the weight that Plaintiff could lift and/or carry or the amount of time that he could sit, walk, and stand"); *Ashcraft v. Comm'r of Soc.* Sec., No. 7:05-CV-1342 (GLS/DEP) 2008 WL 2967512, at * 12 (N.D.N.Y. July 28, 2008); *Aull v. Astrue,* No. 5:05-CV-1196 (LEK/DEP), 2008 WL 2705520, at * 16 (N.D.N.Y. July 10, 2008); *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence"); *Brown v. Barnhart*, No. 01-CV-2962 (JG), 2002 WL 603044, at *5 & n. 5 (E.D.N.Y. Apr. 15, 2002)(remand required by ALJ's failure to perform function-by-function analysis); *Mardukhayev v. Comm'r of Soc. Sec.*, No. 01-CV-1324 (JG), 2002 WL 603041, at *5 (E.D.N.Y. March 29, 2002)

  In this case, the ALJ erred by failing to assess all of Plaintiff's work-related abilities on a function-by-function basis. Specifically, the ALJ neglected to determine Plaintiff's ability to sit, walk, stand, push, pull, reach, handle, stoop or crouch. An assessment of those skills is necessary because the record indicates that Plaintiff suffered from a decreased range of motion following her injury, the consultative examiner opined that Plaintiff's ability to lift, carry, push and pull was limited (T. at 253), and the agency analyst opined that Plaintiff could only occasionally

11

climb, balance, stoop, kneel, crouch or crawl.  (T. at 262.)

After being admitted to the hospital after being shot, Plaintiff underwent exploratory surgery and doctors noted that there were no vascular nor skeletal injuries and that she did not have any neurological deficits.  (T. at 142-43.)  A CT scan revealed no spinal compromise.  (T. 176.)  Doctors found, however, that there was soft tissue and muscle damage.  (T. at 176, 204.)

On June 17, 2003, Dr. Rohit Singh examined Plaintiff and found that she walked without any gait difficulty, that there were no cranial nerve or neuromotor deficits, and that range of motion of the neck was adequate.  (T. at 234-36.)

On August 20, 2003, Dr. Daniel L. Carr reported that while Plaintiff had loss of muscle mass in the posterior, anterior, and lateral portions of her right neck musculature, extremity strength was grossly intact with only subjective complaints of numbness and tingling.  (T. at 209.)

On September 15, 2003, PA Velosa noted that Plaintiff had tenderness with palpation in her neck and that range of motion was full with pain.  (T. at 294.)  On September 22, 2003, PA Velosa stated that Plaintiff had decreased range of motion of her neck and diminished sensation along the trauma area.  (T. at 297.)

On September 24, 2003, Dr. Brian P. Anderson stated that Plaintiff had no palpable mass, fluctuance, surrounding erythema, fistula tract, or severe deformity in the muscle.  (T. at 211.) He noted that Plaintiff's subjective complaints could not generally be caused by the remnants of the buckshots left in the wound.  (*Id.*)

On October 7, 2003, Registered Nurse Sally Palmer noted a decreased range of motion of Plaintiff's neck.  (T. at 302.)

On October 15, 2003, PA Velosa reported that Plaintiff was in no acute distress, range of motion of her neck was full with mild discomfort, there was full range of motion of the upper extremities, and she had good strength and sensation. (T. at 304.) On November 5 and 25, 2003, PA Velosa found that Plaintiff had right sided tenderness in her neck with decreased range of motion to the right. (T. at 308, 310.)

In January 2004, Dr. Thangam Perumal noted that Plaintiff had mild tenderness and minimal muscle spasm. (T. at 225-26.) The same month, PA Velosa reported that Plaintiff had some neck tenderness with limited range of motion but good sensation in the upper extremities with good strength. (T. at 244, 312, 315.) A scan of Plaintiff's neck also revealed no abnormal motion in flexion or extension, that disc spaces were well preserved, and that there were foreign bodies still embedded in the soft tissue of the right lateral neck. (T. at 245.)

On March 25, 2004, PA Velosa found that Plaintiff had tenderness on the right side of her neck with decreased range of motion. (T. at 317.)

On April 14, 2004, Dr. Kalyani Ganesh consultatively examined Plaintiff. (T. at 250-53.) Dr. Ganesh observed that Plaintiff's gait and station were normal, that Plaintiff could fully squat, and that Plaintiff needed no help changing her clothing or getting on and off the examination table. (T. at 251.) Dr. Ganesh further noted that Plaintiff's hand and finger dexterity was intact with grip strength at 5/5 bilaterally, that there was full range of motion of the lumbar spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles with full flexion and rotary movement of the cervical spine but limited extension and lateral flexion, that muscle strength was 5/5, and that straight leg raising was negative. (T. at 252.) He concluded that Plaintiff had no limitations with regard to sitting, standing, walking, or climbing but had a moderate degree of

limitation to lifting, carrying, pushing, and pulling. (T. at 253.) The same day, an x-ray of Plaintiff's cervical spine showed no body or disc space pathology. (T. at 254.)

On May 6, 2004, PA Velosa stated that Plaintiff had full range of motion of her neck with mild discomfort. (T. at 319.

On June 19, 2004, a state agency analyst evaluated Plaintiff's physical residual functional capacity and found that she could lift up to ten pounds frequently and occasionally, sit for about six hours in an eight-hour day, stand and walk for about two hours in an eight-hour day, and occasionally perform postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling. (T. at 261-65.)

On September 9, 2004, PA Velosa reported that Plaintiff had decreased motion of her neck but full sensation in the upper extremities with good strength and good perfusion throughout. (T. at 331.) On October 29, 2004, PA Velosa found that Plaintiff had decreased range of motion in her neck and upper extremities secondary to pain, she was refusing to do any activity of the shoulders due to pain, and there was full sensation in the lower extremities. (T. at 335.) Subsequently, on February 4, 2005, PA Velosa stated that Plaintiff had decreased range of motion in her neck but full sensation in the upper extremities with good strength and grip. (T. at 345.)

On February 11, 2005, Dr. Rachna Zirath noted that Plaintiff would not move her neck around but later did and she could also bend down. (T. at 348-49.)

On February 14 and 28, 2005, PA Velosa stated that Plaintiff's neck was supple without pain. (T. at 351, 354.)

On June 2, 2005, Dr. Raymond H. Fiorini stated that Plaintiff had cervical paraspinal

14

muscle atrophy, decreased sensation over some fingers in the left hand, no focal strength deficits, and symmetric deep tendon reflexes. (T. at 365-66.)

The ALJ's decision did not include a function-by-function analysis incorporating the limitations noted in the record. Accordingly, as the ALJ failed to properly evaluate Plaintiff's RFC, remand is recommended.[1]

   **B.   Whether the Commissioner Met His Burden of Proof at Step Five of the Sequential Analysis in Finding That Other Work Exists in Significant Numbers in the National Economy That the Claimant Can Still Perform Despite Any Limitation**

Plaintiff argues that the ALJ erroneously relied on "the grids" at Step Five. (Dkt. No. 7 at 15-16.) Defendant contends that the ALJ's conclusion that there was work in the economy that could be performed is supported by substantial evidence. (Dkt. No. 9 at 19-22.)

Contrary to Plaintiff's argument, the ALJ did not rely on the grids at Step Five. Rather, the ALJ relied on the testimony of a vocational expert to find that Plaintiff is capable of working as an information clerk, office helper, rental clerk, call out operator, order clerk or telephone clerk. (T. at 19.) However, the ALJ's hypothetical to the vocational expert was based on the ALJ's RFC assessment. As discussed above, that assessment was flawed. Therefore, remand would be appropriate to determine the availability of jobs in the national and regional economy based on a revised RFC determination and, if necessary, further vocational expert testimony.

---

[1] Remand, rather than reversal, is recommended as remand is warranted if "further findings or explanation will clarify the rationale for the ALJ's decision." *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)). Here, further findings are necessary. Moreover, there is no persuasive proof of disability in the record requiring reversal. *See id.*

### C.     Whether the Commissioner Erred in Finding That the Plaintiff's Subjective Complaints Were Not Fully Credible

Plaintiff argues that the ALJ failed to properly analyze her credibility. (Dkt. No. 7 at 16-18.) "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529 & 416.929 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a) & 416.929(a) (2005). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c) & 416.929(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of

claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3) (2005).  An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at \*29-\*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at \*19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In his decision, the ALJ stated that while Plaintiff's neck injury and secondary depression could reasonably be expected to cause some limitation, the extent was not as severe as alleged.  (T. at 17.)  Since the ALJ found that Plaintiff's allegations of her limitations were not fully credible (T. at 17), it was incumbent on the ALJ to then assess the factors set forth in 20 C.F.R. §§ 404.1529(c) and 416.929(c), which he did.  The ALJ reviewed and discussed the medications Plaintiff took, the treatment she received, her symptoms, her daily activities, and measures taken to relieve the symptoms.  (T. at 17.)  Thus, the ALJ's findings are entitled to deference and the Court declines to recommend remand on this ground.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to

17

sentence four of 42 U.S.C. § 405(g),[2] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 29, 2008
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[2]  Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2005).